UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **JERRY SOMERSET,** | : | |
| Plaintiff, | : | Civ. No. 17-993 (KM) |
| v. | : | |
| **THE STATE OF NEW JERSEY,** et al., | : | **AMENDED OPINION** |
| Defendants. | : | |

This action grows out of the dissolution of a business venture between longtime friends, Jerry Somerset and Joseph Elam. Mr. Somerset sues under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*. Somerset, who is vision-impaired, alleges that he made the down payment on a van for Elam to drive in connection with their floor refurbishing business. Elam, he says, used the van in another business, in violation of their agreement to share and share alike.

Somerset sued Elam in state court; the matter went to trial; and judgment was entered in favor of Elam. *Somerset v. Elam,* No. DC-06311-15 (N.J. Superior Court, Law Division, Special Civil Part) (the "State Court Action"). Now Somerset has brought suit in federal court against the State of New Jersey; the Hon. Frank Covello, J.S.C., who presided in the State Court Action; Lawrence D. Eichen, Elam's attorney in the State Court Action; Joseph Elam; Strategic Delivery Systems (a/k/a SDSR, the Healthcare Delivery Specialists) ("SDSR"), seemingly the other business in which Elam used the van; and Partners Pharmacy LLC.

Before this Court are motions to dismiss the complaint for lack of jurisdiction or failure to state a claim, filed by Eichen (ECF no. 8); the State and Judge Covello (ECF no. 24); and Partners Pharmacy (ECF no. 25). Partners

1

Pharmacy's motion also includes an application to vacate default. For the reasons stated herein, the motions will be granted.

## I. LEGAL STANDARD ON MOTION TO DISMISS

### A. Rule 12(b)(1)

The motions, in part, are motions to dismiss the complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true. *Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).[1]

Because the Rule 12(b)(1) component of the defendants' motions relies only on the Complaint and documents properly considered on a Rule 12(b)(6) motion to dismiss, I treat it as a facial challenge. I will not weigh the evidence, but will construe the allegations in the light most favorable to the plaintiff.

### B. Rule 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant,

---

[1] A factual attack, on the other hand, permits the Court to consider and weigh evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Such a factual attack "does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Where the plaintiff, like Mr. Somerset here, is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

3

## C. Consideration of Complaint exhibits and State Court pleadings on motion to dismiss

The Complaint and the motions to dismiss rely on matters that are, strictly speaking, extrinsic to the pleadings. Mr. Somerset's Complaint attaches three letters; one of the defense motions attaches certain filings from the prior State Court Action; and Somerset's reply to Partners Pharmacy attaches part of a transcript from the State Court Action. Both sides' attachments are properly considered on a motion to dismiss.

Attached to the Complaint as exhibits are three letters: one from the U.S. Department of Justice, Civil Rights Division, and two from the United States Attorney for this District. (ECF no. 1 at 8–10) Those letters concern Mr. Somerset's complaints about the conduct of Judge Covello and Mr. Elam in the prior State Court Action.

A court considering a Rule 12(b)(6) motion is generally confined to the allegations of the complaint, but it may also consider authentic documents attached or integral to the complaint:

> Although [the rule against considering extrinsic documents is] phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). *See also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *In re Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice ... and has relied upon these documents in

4

framing the complaint.'" *In re Burlington*, 114 F.3d at 1426 (quoting *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991)).

The authenticity of these three letters does not appear to be disputed. They are attached and integral to the Complaint, which in effect incorporates them by reference. Although these letters are of limited significance in relation to the issues on these motions to dismiss, it is permissible to consider them.

The State and Judge Covello attach to their motion to dismiss certain papers from that State Court Action: the complaint, the judgment, a post-trial motion filed by Mr. Somerset, and the State court's order denying that motion. (ECF no. 24-7) Mr. Somerset's Reply attaches part of a transcript from the State Court Action. (ECF no. 27-1) Although not attached to the Complaint, these documents may be considered integral to its claims, which refer to and are based on the judgment and proceedings in the State Court Action.

In addition, these State court filings are public records of which a court may take judicial notice:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Mr. Somerset cites the transcript excerpt in support of his contentions against Partners. (ECF no. 27 at 2) Defendants cite the court documents in support of their contentions that, under the *Rooker-Feldman* doctrine and principles of *res judicata*, this action is barred by the prior state court judgment. The documents are relevant, not for facts contained therein, but in

order to establish the nature of the prior proceedings and the rulings of the State court. For that limited purpose, I will take notice of them.

## II. PROCEDURAL BACKGROUND

### A. The Prior State Court Action

On November 12, 2015, Mr. Somerset filed the complaint against Joseph Elam in the State Court Action. *Somerset v. Elam*, No. DC-06311-15 (N.J. Superior Court, Law Division, Special Civil Part) (ECF no. 24-7 at 2) The State Court Action complaint says that Elam did not act properly as Somerset's business partner in that, *inter alia*, he cheated Somerset and "took the van for his purpose only." The complaint demanded $15,000 in damages.

The matter was tried without a jury on April 20, 2016. (*See* ECF no. 27-1, ECF no. 24-7 at 5) The presiding judge was Hon. Frank Covello, J.S.C. Mr. Somerset appeared *pro se*; Mr. Elam was represented by Lawrence D. Eichen, Esq.

In the limited transcript excerpts, Mr. Somerset testifies that he and Mr. Elam agreed to start a business and to reinvest profits in the business. He shows the court and opposing counsel documentation of the price of the van, which was $10,000. (ECF no. 27-1)

At the close of the plaintiff's case, Judge Covello granted the motion of Mr. Elam for entry of judgment in his favor. (ECF no. 24-7 at 15) Elam's counterclaim was dismissed on condition that Somerset tender the van keys to the van to Elam.[2] (ECF no. 24-7 at 5)

After trial, Mr. Somerset moved for reconsideration. The motion states that Somerset was not given the opportunity to present evidence of Elam's breach of contract in relation to their business, S&B Carpet Cleaning & Floor Care Co. He cites a statement in Elam's counterclaim to the effect that the two entered into an agreement to purchase a used 2007 Ford Econoline van for use in their business. He states that their implied agreement did not permit the van to be used for the transportation of medical equipment and supplies. Rather, it

---

2   The nature of the counterclaim is not stated.

6

was to be used in the parties' joint business, and proceeds were to be shared. Somerset stresses he is not licensed to drive, and says that Elam took advantage of his disability. (ECF no. 24-7 at 8, 10–11)

On October 31, 2016, Mr. Somerset evidently sent a letter or letters to the United States Attorney's Office for the District of New Jersey (USAO). The USAO sent two letters, both dated November 28, 2016, in response. (ECF no. 1 at 9–10) The letters note that Somerset has lodged complaints against Judge Covello and Joseph Elam in relation to a possible violation of the ADA. The USAO letters state that the Office will not take further action, but has referred the complaints to the appropriate agencies.

Whether directly from Mr. Somerset, or by referral from the USAO, the U.S. Department of Justice, Civil Rights Division, received a complaint that Judge Covello had violated the ADA. In a letter dated December 5, 2016, the Division declined to take further action. (ECF no. 1 at 8)

All three letters state that they are not determinations on the merits.

### B. Complaint in This Action

On February 14, 2017, Mr. Somerset filed his Complaint in this federal court action. ("Complaint," cited as "Cplt.," ECF no. 1) Its allegations, taken as true for purposes of these motions, are as follows:[3]

In the 1990s, Mr. Somerset was diagnosed with diabetes. Despite surgery, his vision was irreparably damaged.

At some point, Somerset entered into an implied contract with Elam, an old and trusted friend. The two were to engage in the business of repairing damaged floors. Somerset's other main source of income is Social Security disability income benefits (SSDI), but he wished to be self-sufficient.

Somerset made the down payment to purchase a 2007 Ford Econoline van for use in the floor refurbishing business. The purchase was financed by

---

[3] This pro se complaint is not set forth in numbered paragraphs. In summarizing the allegations, I have taken facts from various parts of the Complaint and organized them. Further citation, however, is impractical.

7

Leaders Financial Company. He implies that the source of the down payment was his SSDI income, which is deposited to his bank account.

The van was titled to Elam. This was done only because Somerset cannot drive. There was never any agreement that Elam would be the sole owner of the van. The van was insured under the name of S&B Carpet Cleaner and Floor Care Company.

Elam agreed to do the driving and agreed that the proceeds from the exploitation of the van would be split between them. Somerset was assured that Elam would not use the van for any other business. Elam, however, used the van to deliver medical equipment and supplies. Somerset alleges that Elam received profits from that business that he did not share.

Defendant SDSR was aware of the contract and Somerset's disability, but nevertheless used Elam and the van to deliver their products. Defendant Partners Pharmacy was also aware of the contract and Somerset's disability.

Defendant Lawrence D. Eichen was the attorney for Elam in the State Court Action. He acknowledged in court papers and on the record that Somerset and Elam had an implied contract. He also was aware that Somerset's income came from SSDI.

Count 1 alleges that defendant Frank Covello, the judge in the State Court Action, "impaired the obligation of my contract between Joseph Elam and me." Elsewhere, the Complaint levels the same accusation at Elam, and cites the Constitution's prohibition on impairment of contracts. U.S. Const., art. 1, § 10.

Count 2 primarily relies on the ADA. It cites both Title II and Title III. Elsewhere, the Complaint alleges that defendants Elam and Covello deprived Somerset of due process of law, subjected him to an "ex parte hearing," and denied him the right to be heard under the ADA.[4]

---

[4] The meaning is not clear. Even the few pages from the trial transcript submitted by Mr. Somerset establish that he was present at the trial and that he participated. He may be objecting to the Court's dismissal of the action at the close of his case-in chief. That procedure, however, is not *ex parte*; the plaintiff has had the opportunity to

8

Because Mr. Somerset is suing *pro se,* I will construe the Complaint liberally. I interpret it as interpreting a claim under the ADA as well as a civil rights claim under 42 U.S.C. § 1983.

## III. JUDGE COVELLO

At the outset, I dismiss all claims as to Judge Covello. Judges are entitled to absolute immunity from suits based upon the performance of their judicial functions. *Mireles v. Waco,* 502 U.S. 9, 9-10 (1991); *Briscoe v. LaHue,* 460 U.S. 325, 334 (1983); *Stump v. Sparkman,* 435 U.S. 349, 359 (1978); *Capogrosso v. The Supreme Court of New Jersey,* 588 F.3d 180, 184 (3d Cir. 2009). There can be no doubt that the plaintiff's claims against Judge Covello arise from his official acts and rulings in connection with the State Court Action. It is not claimed, for example, that he had any involvement in the underlying events involving the van.

A disappointed litigant's remedy is not to sue the judge, but to appeal. Judge Covello enjoys absolute immunity, and the Complaint is dismissed as to him.[5]

## IV. *ROOKER-FELDMAN* AND *RES JUDICATA*

### A. *Rooker-Feldman*

Mr. Somerset, having lost the State Court Action, is attempting to overturn that result by suing the defendant (as well as the defendant's counsel, the State, the presiding State judge, and others). The *Rooker-Feldman* doctrine

---

present evidence. Mr. Somerset at one point refers to an "an ex parte [] hearing for reconsideration." This may refer to the State court's decision on his post-trial motions without oral argument. Again, deciding a motion without oral argument is within the Court's discretion; it is not an *ex parte* proceeding.

5 I add, for clarity, that dismissal of Judge Covello would seemingly dispose of the claims based on alleged "ex parte" or unfair proceedings in the State Court. Those claims, it seems, would necessarily be directed at the Judge.

The remaining discussion in this Opinion, to the extent it touches on the Judge, may be regarded as setting forth alternative grounds for dismissal.

9

bars any such attempt to use the federal trial courts as a court of appeal from state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

A federal district court does not sit in review of state court judgments. *Rooker-Feldman* thus operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005).

*Rooker-Feldman* has four essential prerequisites:

> (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

This case fits the bill; much if not all of it is barred by the *Rooker/Feldman* doctrine. The judgment in the State Court Action was adverse, and was rendered before this action was filed. The plaintiff, Mr. Somerset, complains of the State court judgment and seeks to have this Court review and reject it.

It is true, of course, that Mr. Somerset has refashioned his contract claims as claims under the ADA or the Constitution. *Rooker-Feldman* is not so narrow as to be avoided by a switch of legal theories or a claim that the state proceedings were unfair. Under *Rooker-Feldman*, lower federal courts cannot entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision. *See Guarino v.*

10

*Larsen*, 11 F.3d 1151, 1156–57 (3d Cir. 1993); *Port Auth. Police Benev. Ass'n v. Port Auth.*, 973 F.2d 169, 178 (3d Cir. 1992). The first alternative, actual adjudication, requires little explication. As for the second, a federal claim is "inextricably intertwined" with a prior state court decision if "granting the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling." *FOCUS v. Allegheny County Court of Common Pleas.*, 75 F.3d 834, 839-40 (3d Cir. 1996). In the context of "inextricably intertwined" claims, the court must apply *Rooker-Feldman* with caution. The doctrine does not operate to preclude all claims that are related to the state court judgment; it applies only to claims that were the basis of, or injuries allegedly caused by, the state court judgment. *See Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 126 (3d Cir. 2016) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)). To the extent that the federal action presents "some independent claim," *i.e.*, one that does not implicate the validity of the state court judgment, the doctrine does not apply. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292, 125 S. Ct. 1517 (2005), quoted in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547–48 (3d Cir. 2006)).

The grievance at the heart of this federal-court complaint is that the State trial court denied Mr. Somerset's claim of breach of contract. He wishes to overturn that result. He insists here, as he did there, that he had an implied agreement with Elam. The State court, he says, should have recognized that Elam had title to the van only because Somerset is blind and cannot drive. He argues that the State court's judgment cannot be reconciled with opposing counsel's acknowledgement that the parties had an agreement.[6] He alleges that the State court judge and Mr. Elam "impaired" his rights under the contract.

---

[6] Mr. Somerset implies that this entitled him to prevail. Of course, the existence of an agreement is not the only element of a contract claim, and entitlement to possession of the van, too, may have depended on many other factors. At any rate, a claim that a judgment was against the evidence is properly brought on appeal, not in a separate federal-court action against the judge and the adversary party.

He alleges that the remaining defendants knew about the contract and permitted or participated in the breach. He alleges that the procedures in the State trial were unfair, and that he was denied the right to be heard. Overall, he argues, the result of the State trial was erroneous.

These claims amount to a complaint that Mr. Elam, the court, and others failed to respect Somerset's rights under the agreement or acknowledge the merit of his contract claim. The claim here is that Mr. Somerset should have prevailed on that state-law claim. The relief sought, realistically speaking, is that this Court should undo the result of the State trial. But where a party asserts that his adversary should not have won, or that the presiding judge erred, the proper recourse is to file an appeal within the State court system—not to sue his adversary again, or sue his adversary's lawyer, or the court.

The Complaint is less than clear. In the alternative, then, I reserve the possibility that some aspect of the claims—those involving nonparties to the State Court Action, denials of due process, or some sort of independent violation of ADA, for example—might be treated as independent for purposes of *Rooker-Feldman.* Such claims, however, are barred on multiple other grounds.

### B. Res Judicata

Claims that survive scrutiny under *Rooker-Feldman* may nevertheless be barred by doctrines of *res judicata. See Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 93 (3d Cir. 2005) ("[E]ven if review of the complaint were not barred by *Rooker–Feldman*, we agree with the District Court that Ayres–Fountain's claims were barred by res judicata."). I therefore consider the *res judicata* effect of the judgment in the prior State Court Action.[7]

The preclusive effect of a state court judgment in a subsequent federal action is governed by the law of the state that adjudicated the original action.

---

[7] Although *res judicata* is an affirmative defense, it may be considered on a motion to dismiss if its applicability can be determined from the face of the complaint and documents properly considered on a Rule 12(b)(6) motion. *See Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

*See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). Here, that State is New Jersey.

Claim preclusion in the traditional sense tends to be subsumed by New Jersey's broad "entire controversy" rule. The entire controversy rule emphasizes, not just claims within the scope of the prior judgment, but all *claims* that a party *could have joined* in a prior case based on the *same transaction or occurrence*. The entire controversy doctrine thus "requires a party to bring in one action 'all affirmative claims that [it] might have against another party, including counterclaims and cross-claims,' . . . or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 662 A.2d 509, 513 (1995)).

> We have described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1172 (N.J. 1989); *see also* N.J. Const. art. VI, § 3, ¶ 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.*, 168 A. 796, 797 (N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon.")....

*Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2014).

The entire controversy doctrine applies across the state/federal court divide; that is, it bars an action in federal court "when there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). Thus the doctrine extinguishes any subsequent federal-court claim that could have been joined, but was not raised in the prior state action:

> Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action. The doctrine has three purposes: (1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay. *See DiTrolio v. Antiles*, 142 N.J. 253, 662 A.2d 494, 502 (N.J.1995). As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties.

*Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999).

The preclusive effect of the rule, as to claims not joined in the prior action, is explicit: "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine [with irrelevant exceptions]." N.J. Ct. R. 4:30A. (In its prior, unamended version, the Rule referred to non-joinder of "claims or parties.")

In the State Court Action, Mr. Somerset asserted a breach of contract claim against Mr. Elam. There is no reason, however, that he could not have asserted his ADA or Constitutional claims.

Even setting aside *Rooker-Feldman*, then, the entire controversy doctrine would independently bar these federal-court claims against Mr. Elam.

## V. THE STATE

Once again, I reserve an issue. I consider the possibility that claims against the State might escape the reach of *Rooker/Feldman* or the entire

14

controversy doctrine. Other grounds, however, amply justify dismissal of claims against the State.

## A. Eleventh Amendment Immunity

The Eleventh Amendment to the U.S. Constitution, which is of jurisdictional stature, renders the states immune from certain claims: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. For more than a century, the Eleventh Amendment has been held to incorporate a more general principle of sovereign immunity. In general, it bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984); *Kelley v. Edison Twp.*, No. 03-4817, 2006 WL 1084217, at *6 (D.N.J. Apr. 25, 2006) (citing *Bennett v. City of Atl. City*, 288 F. Supp. 2d 675, 679 (D.N.J. 2003)); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Hans v. Louisiana*, 134 U.S. 1 (1890).[8]

Congress may, however, abrogate the States' Eleventh Amendment immunity. Claims against the State are therefore barred only if Congress has not excepted them from the scope of the Eleventh Amendment immunity. As to that question, the analysis is simple as to § 1983, but somewhat more complex as to the ADA.

Considering the Complaint in its guise as a § 1983 action, I hold that dismissal is required. Although Congress may in some circumstances possess

---

[8] This immunity would apply to Judge Covello as well. *See Robinson v. New Jersey Mercer County Vicinage-Family Div.*, 514 Fed. App'x 146, 149 (3d Cir. 2013) (New Jersey county court was "clearly a part of the state of New Jersey," so "both the court itself and its employees in their official capacities were unconsenting state entities entitled to immunity under the Eleventh Amendment") (citing *Benn v. First Judicial Dist. Of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005)); *Dongon v. Banar*, 363 Fed. App'x 153, 156 (3d Cir. 2010) ("[T]he state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment....").

15

the power to override a state's sovereign immunity, it did not do so when it enacted Section 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979).[9] Constitutional claims that Mr. Somerset was denied due process or a hearing at trial, or that the judgment violated the prohibition on impairment of contracts, for example, cannot be maintained against the State.

As to the ADA, the Eleventh Amendment analysis is more complex, and it may turn on the precise claim being asserted. *See Tennessee v. Lane*, 541 U.S. 509, 517, 124 S. Ct. 1978, 1985 (2004) (Title II of ADA abrogates States' immunity as to action for damages based on denial of access to the courts); *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity"); *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S. Ct. 955 (2001) (Title I of ADA did not abrogate the States' immunity with respect to employment-related claims).

The allegations of the Complaint are not specific enough to permit a Eleventh Amendment analysis of Mr. Somerset's ADA claims against the State. I therefore set that issue aside.

### B. Failure to State a Claim

There remains the problem that the Complaint fails to allege any facts from which the State's liability could be inferred.

Title II of the ADA[10] provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

---

[9] Closely related is the principle that the State, its entities, and its officials are not "persons" subject to liability under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989). I do not discuss it separately.

[10] Mr. Somerset could also be asserting a parallel claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Because the standards are virtually identical, *see Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 n.3 (3d Cir. 2015), I do not discuss it separately.

16

The Complaint's references to the ADA concern a "right to be heard"; a general sense that some defendant or defendants took advantage of Mr. Somerset's blindness; and an allegation that the deposit money for the van came from his SSDI benefits. These allegations are not sufficient to plausibly suggest that the State excluded Mr. Somerset from some program or benefit, or discriminated against him, in violation of the ADA. Indeed, it is difficult to discern what the State's involvement, if any, is alleged to have been.

Another of Mr. Somerset's claims is that the Judge and Mr. Elam impaired the obligations under his contract with Elam, in violation of Article I, section 10 of the U.S. Constitution.[11] Because that provision, by its terms, applies only to a "State," I discuss it here, in relation to the State's liability.

The Contracts Clause, so called, provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." *Id.* By its plain language, this Clause has no application to a private party's breach of contract, or even to a State court's erroneous denial of a claim of breach of contract. Rather, it prohibits a particular kind of *ex post facto* legislation, impairing contractual obligations already entered into. The Contracts Clause "applies only to exercises of *legislative* power." *Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 874 (3d Cir. 2012) (citing *Ross v. Oregon*, 227 U.S. 150, 162, 33 S. Ct. 220 (1913) (clause is "aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, of the doings of corporations or individuals")).

There are no facts alleged that tend to suggest that the State, whether through Judge Covello or in any other way, violated the Contracts Clause.

---

[11] "No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."

## VI. EICHEN AND PARTNERS PHARMACY

Defendants Eichen and Partners Pharmacy have separately moved to dismiss the Complaint. The foregoing grounds, standing alone, may suffice to require dismissal, but I briefly discuss additional grounds raised in their motions.

### A. Motion of Defendant Eichen

Defendant Lawrence D. Eichen, Esq., is the attorney who represented Elam in the State Court Action.

There is no cause of action under the ADA based on an attorney's representation of a disabled person's adversary in a breach of contract suit. The Complaint alleges that Mr. Eichen "was a Title III Private Entity," and that at one point he acknowledged the existence of an implied contract between Somerset and Elam. Nothing in Title III would appear to apply to Eichen's alleged conduct here.

To the extent a section 1983 claim may have been intended, it could not apply to Eichen, a private party, as a matter of law. *Steward v. Meeker*, 459 F.2d 669, 669-70 (3d Cir. 1972) (private attorney was not a state actor under Section 1983); *Polk County v. Dodson*, 454 U.S. 312 (1981)(even court-appointed defense attorneys do not act under the color of state law for purposes of Section 1983).

For these additional reasons, the claims against Eichen are dismissed for failure to state a claim.

### B. Motion of Defendant Partners Pharmacy

Partners Pharmacy, LLC moves to set aside default and to dismiss the Complaint for failure to state a claim.

The Complaint was filed on February 14, 2017. The docket contains proof of service on March 31, 2017. (ECF no. 13) Partners Pharmacy failed to answer or otherwise move in response to the Complaint, and default was entered by the Clerk on May 8, 2017. (Entry following ECF no. 23) No default judgment has been sought or entered.

A clerk's entry of default may be set aside for "good cause." Fed. R. Civ. P. 55(c). I construe that Rule in keeping with the spirit of the Federal Rules that cases should be decided on the merits. Doubtful cases will therefore be resolved against default. *Laurier v. D'Ilio*, No. 3:15-CV-6043-BRM-TJB, 2017 WL 3229065, at *1 (D.N.J. July 31, 2017).

A court's determination of "good cause" must take into account the following three factors:

"(1) whether the plaintiff will be prejudiced;

(2) whether the defendant has a meritorious defense;

(3) whether the default was the result of the defendant's culpable conduct."

*Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985) (line breaks added for clarity); *accord United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).

As to factor (1), there is no particular prejudice to Mr. Somerset here. The case is in its early stages. No discovery has been taken. Partners Pharmacy seems to be a marginal defendant whose liability is likely to rise or fall with that of the others. I have no evidence that, in the interim, any relevant evidence was lost, or anything occurred that would hinder the plaintiff's presentation of his case.

As to factor (3), Partners Pharmacy has little to offer by way of explanation; it hypothesizes that if the summons and complaint were served, someone mislaid them. Still, there are no indications of anything beyond negligence. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984) (negligence does not satisfy culpable conduct standard). In particular, there are no indicia of willful or bad faith conduct, and Partners appears to have responded with alacrity once the default came to its attention. Indeed, this motion was filed on June 7, 2017, about one month after the default was entered on the docket.

As to factor (2), Partners Pharmacy points to a meritorious defense, or at least a meritorious motion to dismiss.

As to this defendant, the Complaint makes two allegations: (1) "Defendant Partners Pharmacy, LLC failed to [make] payment for the use of my vehicle as agreed upon the contractual relationship with Joseph Elam [for] the use of my vehicle"; and (2) "Partner[s] Pharmacy LLC [and another defendant] . . . are Title III private entities under the Americans with Disabilities Act of 1990."

These allegations, however liberally read, come nowhere near stating a claim against Partners Pharmacy. It is alleged that Partners failed to pay, but it is impossible to discern why Partners would be liable to pay. It is not alleged what, if anything, Partners did in relation to Elam; what services, if any, Elam performed for Partners; and what obligations Partners could have had under the agreement, which was between Somerset and Elam. It is not alleged that Partners discriminated against Somerset or denied him access to anything.

For these reasons, the motion of Partners Pharmacy to vacate default and dismiss the Complaint for failure to state a claim is GRANTED.

## CONCLUSION

For the foregoing reasons, the motions to dismiss filed by the State and Judge Covello (ECF no. 24) and Eichen (ECF no. 8), are GRANTED. The motion of Partners Pharmacy (ECF no. 25) to vacate default and dismiss the Complaint is GRANTED. An appropriate order has already been filed as DE 31.

This Amended Opinion replaces DE 30, filed on September 26, 2017.
Dated: December 20, 2018

KEVIN MCNULTY
United States District Judge